**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
GLOBAL CAPITAL PARTNERS FUND LLC,

                            Plaintiff,

     -against-

WE WOULD AGRICULTURAL HOLDINGS LP,

                          Defendant.
-----------------------------------------------------------------X

**CV   2021-490**

**COMPLAINT**

Plaintiff, GLOBAL CAPITAL PARTNERS FUND LLC, through counsel, as and for their Complaint against WE WOULD AGRICULTURAL HOLDINGS LP, states the following:

## THE PARTIES

1. Plaintiff GLOBAL CAPITAL PARTNERS FUND LLC ("Global" and/or "Plaintiff") is a domestic corporation organized and existing under the laws of the State of New York.

2. Global maintains its offices at 555 Fifth Avenue, Suite 302, New York, New York 10017.

3. Now and at all other relevant times, Global is a commercial mortgage lender conducting business in the State of New York as well as in other states including but not limited to the State of Florida.

4. Defendant, WE WOULD AGRICULTURAL HOLDINGS LP ("WWAH" and/or "Defendant"), is a limited partnership organized and existing under the laws of the State of Delaware, conducting business at 3101 South Ocean Drive, Unit 3808, Hollywood, Florida 33019.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because Plaintiff is deemed a citizen of the State of New York; because Defendant is deemed a citizen of the State of Delaware; and because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6. Venue for this action is proper and appropriate in the Southern District of New York pursuant to 28 U.S.C.§1391(b)(2), because a substantial part of the events giving rise to the claim(s) occurred within the State of New York.

## BACKGROUND, FACTS, CLAIMS AND CAUSES OF ACTION

7. Plaintiff's repeat and reallege, as if set forth fully herein, all of the allegations made previously in this pleading.

8. Defendant is a self-described single purpose entity established to own and develop cultivation space for the cannabis industry.

9. Joseph Stadlen is manager and majority owner of Defendant.

10. In or about September 1, 2020, Defendant submitted a loan application to Global seeking a loan secured by real property know as and by 7315 N.W. 126 Street, Gainesville, Florida 32653 in the amount of $6,500,000.00 (the "Loan").

11. Said loan application was completed, initialed and duly executed by Defendant's manager, Joseph Stadlen.

12. Both prior to Defendant's submission of the loan application and multiple times thereafter, Plaintiff advised Mr. Stadlen that Global was a real property equity lender only, did not make business loans of any kind, and any improvements to Defendant's property made for business use, in this case, cannabis cultivation, would not be included in the appraisal of the property.

13. On or about September 22, 2020, Global issued Defendant a commitment letter indicating that Global would commit to fund a loan in the amount of $6,500,000.00 based on certain specified terms and conditions as well as additional stipulations (the "Commitment").

14. The duly executed Commitment required the sum of $65,000.00 be paid upon the issuance of the Commitment, and that "this fee is non-refundable."

15. The duly executed Commitment required that Plaintiff obtain a first lien on the property.

16. The duly executed Commitment was contingent upon "receipt and review of Lender ordered MAI Appraisal showing satisfactory value."

17. The duly executed Commitment required "receipt and review of Title Report and legal opinion on same".

18. The duly executed Commitment required a "legal opinion on all related documentation".

19. The duly executed Commitment required "compliance of all requirements of the mortgage, investor conditions, secondary market approval, and Government Agencies, where applicable, Take out loan if applicable."

20. The duly executed Commitment explicitly stated that "this agreement is partially based on the information provided by the proposed Borrowers or their representatives, should any of the information be untrue and/or misstatements we shall not be obligated to proceed, and all monies received will deemed earned as partial liquidated damages."

21. The duly executed Commitment explicitly stated that Global would lend a "maximum loan to value of fifty (50%) percent".

22. In or about October 28, 2020, the lender ordered MAI appraisal was conducted of the property, in which Mr. Stadlen, on behalf of Defendant was present and acting throughout.

23. In or about November 13, 2020, the MAI appraisal report was issued by the appraiser which indicated an appraised value of the property in the sum of $3,340,000.00.

24. That Defendant was provided a copy of the appraisal.

25. That Defendant was not in agreement with the appraised value contained in the appraisal.

26. That on or about December 2, 2020, a third-party on behalf of Defendant forwarded an email to Global seeking to contest and increase the appraised value of the property based upon the current and/or future improvements to be made therein.

27. That Global rejected this "value" approach to the appraisal of the property which Defendant was advancing and restated, *inter alia*, that Global was an equity lender only and does not give value to Defendant's business, specific improvements which would only have value to a subsequent purchaser in a like or similar business.

28. That Global further identified to Defendant unresolved issues and legal concerns regarding the licensing issued by the State of Florida permitting the cultivation of cannabis, and the relationship between Defendant and Harvest Health & Recreation Inc. operating the facility.

29. That as a result of the foregoing, in conjunction with the terms and conditions of the Commitment, Global could not proceed with consummating the Loan with Defendant.

30. Thereafter, despite the contractual provisions set forth in the Commitment, Defendant improperly demanded the refund of the "non-refundable" Commitment fee in the sum of $65,000.00.

31. Global, being under no obligation to return the Commitment fee in the sum of $65,000.00 and having expended time, money and allocated resources in connection with Defendant's loan application, declined Defendant's demand.

32. In a clear and unequivocal act of retaliation, in or about December 12, 2020, Defendant's manager Joseph Stadlen created and publicly published false, defamatory and disparaging statements on the website known as and by Birdeye.

33. Specifically, Joseph Stadlen stated on Birdeye:

> Absolute SCAM artist. No intention of honoring their Commitment and shows no remorse despite their numerous failings to close. Joe Malvasio chooses to hide behind ambiguous wording. Proceed with extreme caution when dealing with GCP/Global Capital Fund.

34. In a clear and unequivocal act of retaliation, in or about December 12, 2020, Defendant's manager Joseph Stadlen created and publicly published false, defamatory and disparaging statements on the website known as and by the Better Business Bureau.

35. Specifically, Joseph Stadlen stated on the Better Business Bureau:

> Absolute SCAM artist. No intention of honoring their Commitment and shows no remorse despite their numerous failings to close. Joe Malvasio chooses to hide behind ambiguous wording. Proceed with extreme caution when dealing with GCP/Global Capital Fund.

36. That the statements made and published via Mr. Stadlen were precise in their meaning so as to give rise to clear factual implications which are unfounded.

37. That the statements made and published via Mr. Stadlen are easily disproven by verifiable facts and/or are objectively capable of disproof.

38. That the statements made and published via Mr. Stadlen are not characterized as opinion but rather as fact.

39.     That the context of the statements made and published via Mr. Stadlen were made solely as a means of retaliation and to injure the reputation and goodwill of Global without any factual basis.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Libel *Per Se*)

40.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "39" as if more fully set forth at length hereat.

41.     On December 12, 2020 Mr. Stadlen on behalf of Defendant did make false and disparaging statements falsely attacking Plaintiffs' business, business practices, professionalism, ethics, ability, honesty, truthfulness, integrity, and financial stability.

42.     The defamatory statements, which were publicly published by Mr. Stadlen on behalf of Defendant on the websites known as the Better Business Bureau and Birdeye, make false and disparaging statements about Plaintiff's professional abilities as a hard money/commercial lender and business owner including attacking Plaintiff's skill, professionalism, ethics, ability, honesty, truthfulness and integrity, alleging Plaintiff is a "SCAM artist" and failed to close on Defendant's transaction.

43.     The above-mentioned statements are false and defamatory.

44.     The above-mentioned statements publicly published by Mr. Stadlen on behalf of Defendant constitute Libel Per Se in that they negatively reflect upon and disparage Plaintiff's professional abilities as a hard money/commercial lender.

45.     The above-mentioned statements publicly published by Mr. Stadlen on behalf of Defendant, further constitute Libel Per Se in that they allege that Plaintiff acted in an unethical fashion to harm Defendant for Plaintiff's own benefit, and continue to act in an unethical fashion.

46. The above-mentioned statements publicly published by Mr. Stadlen on behalf of Defendant are false and defamatory and expose Plaintiff to public hatred, contempt, ridicule, disgrace, and obloquy.

47. The above-mentioned statements were publicly published by Mr. Stadlen in the course of his management and/or employment with Defendant.

48. The above-mentioned statements were publicly published by Mr. Stadlen in the furtherance of his employment with Defendant.

49. The above-mentioned statements were publicly published by Mr. Stadlen for the benefit of his company/employer Defendant.

50. The above-mentioned statements were publicly published by Mr. Stadlen with the knowledge of his employer Defendant.

51. The above-mentioned statements were publicly published by Mr. Stadlen with the consent of his employer Defendant.

52. Since Mr. Stadlen publicly published the false and defamatory statements on Birdeye and the Better Business Bureau, his libelous statements have been viewed by multiple individuals on both cites.

53. Mr. Stadlen on behalf of Defendant made the defamatory statements described above knowing that they were false and without any reasonable basis and/or fact to make such statements.

54. Mr. Stadlen on behalf of Defendant made the defamatory statements described above with reckless disregard for their truth and/or falsity.

55. Mr. Stadlen on behalf of Defendant knew that he had no reliable and/or unbiased evidence or information supporting the above-mentioned statements.

56. Mr. Stadlen on behalf of Defendant, failed to properly determine the truth and/or falsity of his libelous statements prior to publishing the above-mentioned defamatory statements.

57. The defamatory statements were made with malice.

58. As a direct and proximate result of the defamatory statements published by Mr. Stadlen on behalf of Defendant, Plaintiff's good name and reputation among their peers and their community have been injured and damaged.

59. As a direct and proximate result of the defamatory statements published by Mr. Stadlen on behalf of Defendant, Plaintiff's good names and reputations in their profession and trade as a commercial lender and business owner for high quality, professionalism, skill, ability, honesty, integrity, and ethics have been injured and damaged.

60. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but which should not be less than $1,363,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION
## (INJURIOUS FALSEHOOD)

61. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "60" as if more fully set forth at length hereat.

62. The defamatory statements published by Mr. Stadlen on behalf of Defendant, irreparably harmed Plaintiff's good name, reputation, and credit as commercial lenders and business owners resulting in the damage of business relations.

63. Defendant's interference with Plaintiff's business relations was made with malice.

64. Defendant's interference with Plaintiff's business relations was made with actual malice.

65. Damages resulted because of the injury to Plaintiffs' business relationships caused by Defendant.

66. The above-mentioned statements were publicly published by Mr. Stadlen in the course and furtherance, and for the benefit, of his employment with Defendant.

67. The above-mentioned statements were publicly published by Mr. Stadlen with the knowledge and consent of his employer Defendant.

68. The publication of the above-mentioned defamatory statements by Mr. Stadlen on behalf of Defendant falsely put potential and current customers on notice that Plaintiff's skill, professionalism, ethics, ability, honesty, truthfulness and integrity are poor, below standard, and/or are substandard, that Plaintiff and its employees are "SCAM artist" who "chooses to hide behind ambiguous wording" *(emphasis added)*.

69. As a result of the malicious and intentional infliction of harm without excuse or justification, Defendant caused upon Plaintiff, with the intent to cause injury, one potential customers, to wit, Pamol Enterprises Ltd., choose not to process their loan in the sum of $4.7 Million through Plaintiff, all to Plaintiff's damage.

70. As a result of the malicious and intentional infliction of harm without excuse or justification, upon Plaintiff, with the intent to cause injury, Defendant has caused Plaintiff to sustain the sum of $1,363,000.00 in lost income, to date, all to Plaintiffs' damage.

71. Plaintiff respectfully submits that in making the injurious, false, defamatory, and disparaging statements, Defendant, acted with malice, actual malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be determined at trial.

72. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but which should not be less than $1,363,000.00, and for punitive damages in an amount to be determined at trial against Defendants.

## AS AND FOR A THIRD CAUSE OF ACTION
## (DISPARAGEMENT)

73. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "72" as if more fully set forth at length hereat.

74. Mr. Stadlen on behalf of Defendant published false and disparaging statements about Plaintiff's professional abilities as a commercial lender and business owners including their skill, professionalism, ethics, ability, honesty, truthfulness and integrity alleging Plaintiff and their business are "SCAM artist" who "chooses to hide behind ambiguous wording", in statements he publicly published on the Better Business Bureau and Birdeye. *(emphasis added).*

75. Mr. Stadlen on behalf of Defendant knew that his statements were false, or recklessly disregarded the possibility that they were false.

76. Defendant did not retract the false and/or recklessly made statements.

77. Defendant had no absolute or qualified privileges protecting the false statements.

78. The above-mentioned statements were publicly published by Mr. Stadlen, in the course and furtherance, and for the benefit, of his employment with Defendant.

79. The above-mentioned statements were publicly published by Mr. Stadlen with the knowledge and consent of his employer, Defendant.

80. Plaintiff suffered special damages and harm to their reputation and good will among their employees, peers, colleagues, and their community resulting from Defendant's publication of the false and/or recklessly made statements.

81. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but which should not be less than $1,363,000.00.

82. Further, Plaintiff respectfully submits that in making the false, reckless, defamatory, and disparaging statements, Defendant acted with malice, actual malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Tortious Interference with Business Relations)

83. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "82" as if more fully set forth at length hereat.

84. Through Defendant's defamatory statements, Plaintiff has lost potential customer(s), which whom it had a reasonable expectation of entering into loan application(s) and commitment(s) to lend money.

85. That, as a result of Defendant's defamatory statements and the publishing of same on Better Business Bureau and Birdeye, Plaintiff has suffered and is suffering substantial economic injury for the loss of prospective customers and business.

86. That Plaintiff has suffered damages as a proximate cause of Defendant's defamatory statements in an amount to be determined at trial but which should not be less than $1,363,000.00.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Global prays that this Court enter an order and judgment in its favor and against Defendant awarding the Global:

(a) On its First Cause of Action in an amount to be determined at trial but which should not be less than $1,363,000.00;

(b) On its Second Cause of Action in an amount to be determined at trial but which should not be less than $1,363,000.00, and for punitive damages in an amount to be determined at trial against Defendants;

(c) On its Third Cause of Action in an amount to be determined at trial but which should not be less than $1,363,000.00;

(d) On its Fourth Cause of Action in an amount to be determined at trial but which should not be less than $1,363,000.00;

(e) All together with interest, costs, disbursements and legal fees incurred in this action; and

(f) Such other and further relief as the Court may deem just and proper.

Dated: Syosset, New York
January 20, 2021

**JOSEPH, TERRACCIANO & LYNAM, LLP**

   s/ James N. Joseph
**By:  James N. Joseph, Esq.**
*Attorneys for Plaintiff*
2 Roosevelt Avenue, Suite 200
Syosset, NY 11791
(516) 496-0202
jjoseph@jtesqs.com